[Cite as *Moore v. Moore*, 2026-Ohio-3032.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

April Bott Moore,                                    :

      Plaintiff-Appellant,              :            No. 25AP-329
                                                                    (C.P.C. No. 16DR-209)
v.                                                   :
                                                                  (REGULAR CALENDAR)
Robert Dean Moore,                                   :

      Defendant-Appellee.              :

---

D E C I S I O N

Rendered on August 6, 2026

---

**On brief:** *April Bott Moore,* pro se. **Argued:** *April Bott Moore.*

**On brief:** *Eugene R. Butler*; *Baker Hostetler LLP*, and *James A. Loeb*, for appellee. **Argued:** *Eugene R. Butler.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

DINGUS, J.

{¶ 1} Plaintiff-appellant, April Bott Moore ("April"), appeals a judgment from the Franklin County Court of Common Pleas, Division of Domestic Relations, which granted a motion from defendant-appellee, Robert Dean Moore ("Robert"), to reappoint the parties' parenting coordinator for another year. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} April and Robert were married in 2013 and had a child in 2014. They both filed for divorce in January 2016. They agreed to the terms of a shared parenting plan regarding their minor child, which the trial court adopted and incorporated into a decree of shared parenting in December 2016. The shared parenting plan provided: "The parties

shall engage a qualified parent coordinator to assist them in post-de[c]ree dispute resolution." (Oct. 18, 2016 Shared Parenting Plan at 12.)

{¶ 3}    In February 2017, the trial court entered its first order appointing a parenting coordinator for a two-year term ending in March 2019.  After the two-year term ended, Robert requested the appointment of a new parenting coordinator, and April objected to the parenting-coordination process altogether.  The court appointed a new parenting coordinator for a one-year term ending in July 2020.  At the end of the term, Robert moved to reappoint the parenting coordinator, April objected to the process, and the court reappointed the parenting coordinator for another one-year term ending in August 2021.  The following year, the court reappointed the parenting coordinator again, this time pursuant to April's motion, for a one-year term ending in August 2022.

{¶ 4}    In March 2022, after many disagreements over terms of the shared parenting plan and decisions of the parenting coordinator, Robert filed a motion to remove the appointed parenting coordinator, and April moved to reappoint the parenting coordinator.  After a few months of litigation, the trial court declined to remove the parenting coordinator, but it did allow her term to lapse and appointed a new parenting coordinator for a two-year period ending in July 2024.  The parties continued to have extensive disagreements over shared parenting issues and parenting coordinator decisions.  In July 2024, Robert filed a motion to reappoint the parenting coordinator.  April initially agreed to extend the parenting coordinator's appointment for one year, but in January 2025 she filed a memorandum opposing reappointment.

{¶ 5}    During the process of the foregoing parenting-coordination proceedings, the parties went through a divorce trial from 2016 to 2017, a morass of post-trial issues from 2017 to 2021, a divorce decree in May 2021, a partial reversal of the decree in June 2022, a collection of non-final orders from 2023 to 2024 that inspired multiple unsuccessful appeals, and a final amended divorce decree on February 6, 2025.  *See Moore v. Moore*, 10th Dist. case Nos. 18AP-866, 21AP-276, 23AP-399, 23AP-516, 23AP-734, and 25AP-171.  April appealed the final amended divorce decree on the same day it was entered.  The parties do not indicate that the parties' inclusion of a parenting-coordination provision in the shared parenting agreement was a matter in controversy in either of the final orders or the appellate proceedings.

{¶ 6} After the trial court entered the divorce decree in February 2025, it continued to attend to other matters, including parenting coordination. The parties had previously addressed parenting-coordination matters during a hearing in January 2025, and toward the end of February 2025, the parties submitted affidavits in lieu of another hearing on Robert's July 2024 reappointment motion.

{¶ 7} April argued that the current parenting coordinator should not be reappointed because she has not met with the minor child or with the teachers and tutors at the child's school, and because she responds when Robert raises issues but not when April raises issues. April further argued that the parenting coordinator had engaged in substantive ex parte communications with a magistrate at some point prior to May 2023, in violation of Franklin Cty., Dom.Rel.Div., Loc.R. 42(F)(5).[1] Robert contended that the current parenting coordinator has adequately performed her duties and has not engaged in one-sided or prejudicial decision-making, citing the parenting coordinator's ultimate agreement with April's wishes during one of the parents' perennial battles over summer vacation time. Robert disputed the truth of April's accusation of ex parte communications.

{¶ 8} April's accusation about an ex parte communication arose from a 2023 hearing, during which the magistrate asked April multiple times whether her last name was Moore or Bott Moore. April testified that she and the parenting coordinator had a conversation at some later point, during which the parenting coordinator told April that "I wasn't helping myself with the Court or her because I couldn't use my real last name, and I was gaming for last names." (Jan. 23, 2025 Tr. at 54.) April concluded that the parenting coordinator and the magistrate had a private conversation about her. The magistrate did not recall having a conversation with the parenting coordinator about April. The parenting coordinator testified that she did not speak privately with the magistrate, but she did speak to April about confusion over her last name.

{¶ 9} The trial court reached a decision on April 8, 2025, determining that it would reappoint the same individual to serve as the parties' parenting coordinator. The court noted the need for a parenting coordinator pursuant to the parties' shared parenting plan

---

[1] Franklin Cty., Dom.Rel.Div., Loc.R. 42(F)(5) provides that the "parenting coordinator shall not have ex parte communications with the Court regarding substantive matters or issues on the merits of the case." Also see prior Franklin Cty., Dom.Rel.Div., Loc.R. 42(E)(5). The local rule was amended and partially renumbered effective November 24, 2025.

and determined that the current parenting coordinator was an appropriate choice given her historical knowledge of the parties and the case. It found that April had not substantiated her claim that the parenting coordinator and the magistrate had engaged in a substantive ex parte conversation. The court further found that April's claim of one-sided assistance was too vague and subjective to sway the court to reach a different decision. As for the parenting coordinator's failure to interview the child or educators, the court held that the parenting coordinator's role was to help the parents resolve problems rather than to advocate for the child, and April had failed to explain why discussions with educators would be necessary to resolve problems between the parties at this juncture. The court concluded that April's concerns did not outstrip the value of the parenting coordinator's historical knowledge and understanding about the parties. Accordingly, the court reappointed the parenting coordinator and held that the terms from her original 2022 appointment would apply.

{¶ 10} April filed a timely notice of appeal, and the matter is now before this court.

## II. Assignments of Error

{¶ 11} April assigns the following two assignments of error for our review:

> [I.] The Trial Court Erred As a Matter of Law By Subsequently Granting a Motion that was Denied by Issuance of the Trial Court's "Final, Appealable Entry."

> [II.] The Trial Court Erred as a Matter of Law and Abused its Discretion by Granting Robert's Bahnson Motion.

(Sic passim.)

## III. Discussion

{¶ 12} April's first assignment of error challenges the trial court's jurisdiction to enter the reappointment order subsequent to its final order on the parties' divorce decree. Whether a trial court retains jurisdiction to act on a pending matter is a question of law that we review de novo. *Young v. Young*, 2013-Ohio-4933, ¶ 7-9 (10th Dist.). April's second assignment of error challenges the selection of the particular parenting coordinator that the trial court appointed pursuant to the parties' shared parenting decree. We review the matter for abuse of discretion. *See Beatley v. Block*, 2000 Ohio App. LEXIS 2156, *9 (5th Dist. May 16, 2000) (appointment of parenting coordinator reviewed for abuse of

discretion); Franklin Cty., Dom.Rel.Div., Loc.R. 42(C) (barring circumstances not relevant here, a domestic court "may" appoint a parenting coordinator); Sup.R. 6.42(A)[2] (same); *Haas v. Bauer*, 2004-Ohio-437, ¶ 20-23 (9th Dist.) (trial court actions in adopting or implementing shared parenting plan are reviewed for abuse of discretion); *Myers v. Wade*, 2017-Ohio-8833, ¶ 15 (10th Dist.); *S.L. v. L.R.*, 2026-Ohio-92, ¶ 11 (10th Dist.); *Graham v. Graham*, 2003-Ohio-1098, ¶ 16 (11th Dist.).

### A. This Court Has Appellate Jurisdiction Over the Reappointment Order

{¶ 13} Before this court reaches the merits of April's arguments, we must address an argument Robert posed in his appellee brief: that we lack jurisdiction over April's appeal. Robert asserts that the April 8, 2025 judgment entry reappointing the parties' parenting coordinator is not a final order subject to appeal.

{¶ 14} The Ohio Constitution grants jurisdiction to Ohio's courts of appeals "to review and affirm, modify, or reverse judgments or final orders." Ohio Const., art. IV, § 3(B)(2). If a trial court's order is not a final, appealable order, the appellate court lacks jurisdiction over an appeal of that order. *Smith v. Chen*, 2015-Ohio-1480, ¶ 7, citing *CitiMortgage, Inc. v. Roznowski*, 2014-Ohio-1984, ¶ 10. Consistent with the legislative power to pass laws governing the method of exercising appellate jurisdiction, the General Assembly enacted R.C. 2505.02, which specifies what orders are final and appealable. *See Wells v. Wells*, 105 Ohio St. 471, 473-475 (1922); *Wilhelm-Kissinger v. Kissinger*, 2011-Ohio-2317, ¶ 5. The more pertinent portion of the statute provides:

> (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
>
> (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
>
> (3) An order that vacates or sets aside a judgment or grants a new trial;

---

[2] Sup.R. 16.62 was renumbered to Sup.R. 6.42 effective July 1, 2026.

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

R.C. 2505.02(B)(1) through (4).[3]

{¶ 15} This court noted during oral argument that there is a dearth of authority on whether an order appointing (or reappointing) a parenting coordinator is a final, appealable order. April has since filed a notice of supplemental authority, alerting us that the First District Court of Appeals has recently addressed the issue in *Tyra v. Griffith*, 2026 Ohio App. LEXIS 990 (1st Dist. Mar. 20, 2026). The parents in *Tyra* had already divorced when the trial court appointed a parenting coordinator. *Id.* at *2-3; *Tyra v. Griffith*, 2025-Ohio-912, ¶ 6 (1st Dist.). The mother filed various motions to end the parenting-coordination process and motions against the reappointment of parenting coordinators. *Id.* at *3-7. The trial court denied some motions explicitly, and it denied other motions implicitly by proceeding to appoint or reappoint parenting coordinators. *Id.* The mother appealed the court's most recent reappointment order, and the father argued that the appeal should be dismissed for lack of a final, appealable order. *Id.* at *8.

{¶ 16} The First District held that a post-decree order appointing a parenting coordinator is a final, appealable order because parenting coordination is a provisional remedy, R.C. 2505.02(B)(4), because appointing a parenting coordinator against one or both parents' wishes effectively determines the action related to parenting coordination, R.C. 2505.02(B)(4)(a), and because the post-decree posture of the case deprived the mother of a meaningful or effective remedy, R.C. 2505.02(B)(4)(b). *Tyra*, 2026 Ohio App. Lexis at *9-11. We agree.

---

[3] The statute also provides rules for final, appealable orders related to specific scenarios that are not relevant to this case, including class actions, rulings on the constitutionality of specific legislation, appropriation proceedings, and equitable remedies against the enforcement of statutes and regulations. R.C. 2505.02(B)(5) through (8).

{¶ 17}   The term "[p]rovisional remedy" used in R.C. 2505.02(B)(4) is defined as "a proceeding ancillary to an action."   R.C. 2505.02(A)(3).   The concept of an ancillary proceeding " 'is one that is attendant upon or aids another proceeding.' " *State v. Muncie*, 2001-Ohio-93, ¶ 22, quoting *Bishop v. Dresser Industries, Inc.*, 1999-Ohio-911, ¶ 13 (3d Dist.).  An ancillary proceeding "is filed to aid the primary suit, to enforce a prior judgment, or to impeach a prior decree."  *State v. Anderson*, 2014-Ohio-542, ¶ 47.   Parenting coordination is a process "ordered by the Court to assist parties in implementing a parental rights and responsibilities . . . order."  Franklin Cty., Dom.Rel.Div., Loc.R. 42(B)(3).  *See also* Sup.R. 6.42(A).  The allocation of parental rights and responsibilities is, of course, an essential part of a divorce proceeding with children.  R.C. 3109.04.  Thus, parenting coordination aids in the execution of the divorce proceedings and constitutes a provisional remedy.  *Tyra*, 2026 Ohio App. Lexis at *9.  Further, a court's decision reappointing a parenting coordinator "dispose[s] of the merits of the cause or some separate and distinct branch thereof and leave[s] nothing for the determination of the court" and therefore effectively determines the action related to parenting coordination.  *VIL Laser Sys., L.L.C. v. Shiloh Industries, Inc.*, 2008-Ohio-3920, ¶ 8.  And, finally, when divorce proceedings have already ended in a final judgment at the time of the reappointment order, there will be no future appeal of a final judgment at which a parent could seek a meaningful or effective remedy.  *Tyra*, 2026 Ohio App. Lexis at *11.  Accordingly, the reappointment order is a final, appealable order under R.C. 2505.02(B)(4), and we have jurisdiction to consider April's appeal.

**B. The Trial Court Had Jurisdiction to Rule on the Reappointment Motion**

{¶ 18} In her first assignment of error, April argues that the trial court had no authority to rule on Robert's July 2024 reappointment motion after the court entered its final judgment on the parties' remanded divorce decree in February 2025.  April bases her argument on a mixture of concepts that are legally distinct from one another: (1) a final order's implicit denial of pending motions, (2) the merger of temporary orders into a final order, and (3) the loss of continuing jurisdiction over a final order.

{¶ 19} All aspects of April's argument fail due to the nature of parenting-coordination proceedings.  As we explained in our analysis regarding final, appealable orders, parenting coordination is an ancillary proceeding that aids in the implementation

of the court's allocation of parental rights and responsibilities during divorce proceedings. *See* R.C. 3109.04; Sup.R. 6.42(A); Franklin Cty., Dom.Rel.Div., Loc.R. 42(B)(3). Ancillary proceedings are "separate procedures tied to a main action, acting in furtherance of the main action, but with their own lives. Though owing their existence to the underlying action, they are definable offshoots from the main action." *Community First Bank & Trust v. Dafoe*, 2006-Ohio-1503, ¶ 26. The scope of parenting coordination is centered on successfully enforcing the court's allocation of parental rights and responsibilities, and it excludes the possibility of making substantive changes to those rights and responsibilities. *See* Sup.R. 6.42(B); Franklin Cty., Dom.Rel.Div., Loc.R. 42(C). A trial court has the inherent, ongoing power to enforce its own orders in domestic relations matters. *State ex rel. Soukup v. Celebrezze*, 1998-Ohio-8, ¶ 11; R.C. 3105.65(B) ("The court has full power to enforce its decree[.]"). Accordingly, parenting coordination is dependent upon but separate from the principal divorce proceedings, and the mere fact that the principal proceedings have culminated in a divorce decree does not affect the ongoing existence or validity of the parenting-coordination process.

{¶ 20} In support of her argument against the trial court's continued authority over Robert's motion, April first points to the general presumption that any motions still pending at the time of a final order have been denied. *See Thomas v. Columbia Sussex Corp.*, 2011-Ohio-17, ¶ 13 (10th Dist.). She argues that the trial court impliedly denied Robert's reappointment motion when it failed to rule on the motion in its February 2025 judgment entry, and thus its subsequent ruling on the same motion was a nullity. Because parenting coordination is an ancillary proceeding, motions related to parenting coordination are not necessarily deemed denied by a final order in the principal divorce proceedings. *See Foland v. Englewood*, 2010-Ohio-1905, ¶ 20-21 (2d Dist.); *Jefferson Capital Systems v. Gibson*, 2019-Ohio-4793, ¶ 18 (8th Dist.); *Downey v. Goodyear Tire & Rubber Co.*, 2025-Ohio-3256, ¶ 16 (9th Dist.). The trial court did not address or rule on the appointment of parenting coordinators or the propriety of continuing to use the parenting-coordination process in its February 2025 judgment entry, and we find that it would be inappropriate to infer the court's denial of Robert's reappointment motion by the fact of its final order.

{¶ 21} Next, April points to the presumption that temporary or interlocutory orders in a divorce action generally merge into the final decree "unless specifically reduced to judgment or referred to within the decree." *Colom v. Colom*, 58 Ohio St.2d 245, 247 (1979). She argues that the parenting-coordination process merged into the February 2025 judgment entry, extinguishing the premise for Robert's motion and leaving nothing for the court to enforce or rule on. We find *Colom* to be inapposite because the parenting coordination in this case has been a continuing ancillary proceeding rather than a temporary order that was superseded by the final order. The parties' agreement to use parenting coordination was part of the December 2016 shared parenting decree, which was ultimately incorporated by reference into the May 2021 divorce decree. This court's partial reversal of the divorce decree left the shared parenting decree undisturbed, and it was therefore incorporated by reference into the February 2025 judgment entry. Parenting coordination was not merged out of existence by the first or second final order in the parties' divorce action.

{¶ 22} Finally, in her reply brief, April contends that the trial court lacked jurisdiction to rule on Robert's reappointment motion because she had already appealed the February 2025 judgment entry and because the court did not expressly retain continuing jurisdiction over the matter. This topic touches on rules governing the trial court's continuing jurisdiction over matters in a divorce decree, and the more general rule governing the trial court's jurisdiction to rule on any matters after a party has filed a notice of appeal. *See* Civ.R. 75; *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978). Even after an appeal, a "trial court retains all jurisdiction not inconsistent with the court of appeals' jurisdiction to reverse, modify, or affirm the judgment." *Yee v. Erie Cty. Sheriff's Dept.*, 51 Ohio St.3d 43, 44 (1990). Such jurisdiction usually encompasses "collateral issues like contempt, appointment of a receiver[,] and injunction." *Special Prosecutors* at 97. We conclude that parenting coordination falls squarely within that category. Additionally, given the trial court's inherent authority to enforce its own orders, the trial court did not need to articulate in its February 2025 judgment entry that it was retaining jurisdiction over its enforcement mechanism for the decree's allocation of parental rights and responsibilities. *See Soukup,* 1998-Ohio-8, at ¶ 11;

R.C. 3105.65(B). Accordingly, the trial court did not lack jurisdiction to rule on Robert's motion to reappoint the parenting coordinator.

{¶ 23} Given all of the foregoing, we overrule April's first assignment of error.

**C. This Trial Court's Reappointment Decision Was Not Erroneous**

{¶ 24} In her second assignment of error, April argues that the trial court both committed legal error and abused its discretion in its decision to reappoint the parties' parenting coordinator. April does not dispute the validity of the parties' agreement to use parenting coordination, nor does she dispute the trial court's general power to appoint parenting coordinators. The sole issue is the trial court's choice to reappoint the parties' parenting coordinator for another term instead of identifying and appointing someone new.

{¶ 25} In Franklin County, if the circumstances of parties to a divorce action merit the use of parenting coordination, "[t]he Court may order parenting coordination, sua sponte or upon written or oral motion by one or both parties." Franklin Cty., Dom.Rel.Div., Loc.R. 42(C)(2). The court has the discretion to select a particular parenting coordinator through one of the following options:

> (a) Court Employee;
>
> (b) Random selection by the Court from the Court's roster of parenting coordinators;
>
> (c) Specific appointment from the Court's roster of parenting coordinators based on the type of case and the qualifications and caseload of the parenting coordinator; or
>
> (d) Parties select a parenting coordinator from the Court's roster of parenting coordinators.

Franklin Cty., Dom.Rel.Div., Loc.R. 42(E)(2)(a) through (d). The use of the plural term "parties" in Loc.R. 42(E)(2)(d) indicates that the parties must agree on the selection of a parenting coordinator; otherwise, the trial court does not appear to be bound by the suggestions of an individual party when appointing a parenting coordinator. *Compare* Franklin Cty., Dom.Rel.Div., Loc.R. 42(E)(4) (allowing a court to terminate or modify an existing appointment "[u]pon motion of a *party*, for good cause shown"). (Emphasis added.)

{¶ 26} Once appointed, a parenting coordinator's responsibilities include compliance with the appointment order and avoidance of conflicts of interest or the appearance of partiality. Franklin Cty., Dom.Rel.Div., Loc.R. 42(F)(2) to (4). Additionally, the "parenting coordinator shall not have ex parte communications with the Court regarding substantive matters or issues on the merits of the case." Franklin Cty., Dom.Rel.Div., Loc.R. 42(F)(5). If a parenting coordinator commits misconduct or a rule violation, a party "may submit a complaint regarding the performance of a parenting coordinator within one year from the termination of the appointment." Franklin Cty., Dom.Rel.Div., Loc.R. 42(G)(6)(c).

{¶ 27} A trial court enjoys broad discretion in its decisions regarding the details of the allocation of parental rights and responsibilities. *Lupia v. Lupia*, 2026-Ohio-1059, ¶ 9 (10th Dist.). When reviewing such a decision, an appellate court cannot reweigh the evidence, nor can it reverse the trial court's ultimate decision, absent an abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). This court cannot reverse the trial court's judgment on factual grounds as long as the decision is "supported by some competent, credible evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. And we can reverse a judgment for abuse of discretion only where the decision is unreasonable, arbitrary, or unconscionable. *State v. Beasley*, 2018-Ohio-16, ¶ 12.

{¶ 28} In support of her second assignment of error, April presents six sub-arguments about alleged shortcomings in the trial court's decision, along with the assertion that they independently warrant reversal and *require* reversal when considered "[c]omprehensively." (Appellant's Brief at 30.) The format of April's argument appears to call for a finding of cumulative error, which is a doctrine that generally does not apply to civil cases. *See Hartman v. State Med. Bd. of Ohio*, 2026-Ohio-1726, ¶ 46 (10th Dist.). April has not articulated why this case would be an exception to the general rule, and we therefore decline to review the matter for cumulative error.

{¶ 29} In April's various sub-arguments, she asserts that the trial court improperly reached its decision to reappoint the parenting coordinator by allegedly (1) imposing the wrong burden of proof, (2) ignoring the evidence, and (3) basing its decision on speculation. And the trial court's ultimate selection of the parenting coordinator was an abuse of discretion based on April's evidence that the parenting coordinator (4) ignored her

obligation to interview the child and the child's educators, (5) took a biased approach to the parents' concerns, and (6) had an ex parte communication with the presiding magistrate.

{¶ 30} April's arguments fail because, among other reasons, each one is based on a faulty premise. In her first argument, she claims that Robert bore the burden of proving that the trial court should select the current parenting coordinator rather than selecting someone else. He did not. The process of selecting a parenting coordinator is entrusted to the trial court's discretion, and the process does not provide for selection by the parties except as a unanimous request. *See* Franklin Cty., Dom.Rel.Div., Loc.R. 42(E)(2). Although the local rule does not prohibit the parties from providing information or advocacy to facilitate the trial court's decision-making process, it also does not require proof from the parties. In April's second argument, she claims that the trial court expressly stated that its ruling was based solely on Robert's July 2024 motion and April's January 2025 memo contra. It did not. Moreover, the trial court's decision includes information that was not contained in those initial filings, such as details about April's accusation of an ex parte communication. In her third argument, April claims that the trial court "relied solely on speculation and generic guesses that are wholly incorrect" instead of evidence. (Appellant's Brief at 22.) It did not. The trial court explicitly considered evidence provided by the parties, including the testimony of the parenting coordinator, and it drew conclusions from that evidence while also considering the policies underlying the parenting-coordination process.

{¶ 31} In her fourth argument, April claims that the 2022 parenting appointment order obligated the parenting coordinator to interview the child and consult with the child's educators. It did not. The order certainly *authorized* the parenting coordinator to conduct such interviews and consultations, but such actions were not absolute requirements. In April's fifth argument, she claims that she presented uncontested evidence proving that the parenting coordinator listened only to Robert and never to April. She did not. April's evidence indicated that the parenting coordinator was late in resolving a dispute in 2023 and failed to take action on other disagreements between the parties, but other evidence indicated that the 2023 dispute was resolved in April's favor and that April had not requested the parenting coordinator's intervention in various cited disagreements. In April's sixth argument, she claims that the parenting coordinator admitted to having had

an ex parte discussion with the magistrate about April. The record does not so reflect. April's written and oral testimony indicated that the parenting coordinator told April that she was not helping herself with the magistrate by insisting that her last name was Moore rather than Bott Moore. Such a statement could potentially imply that an ex parte discussion took place, but it could also imply that the parenting coordinator had made her own inferences about the magistrate's views based on context clues.

{¶ 32} Based on our own thorough review of the record and all evidence submitted regarding the parenting coordinator's reappointment, we conclude that the record supports the trial court's conclusions regarding the propriety of the reappointment. Some of April's claims about the parenting coordinator were unsubstantiated, and the remainder do not establish that the trial court's decision was unreasonable, arbitrary, or unconscionable. Accordingly, the trial court did not abuse its discretion in deciding to reappoint the parties' parenting coordinator, and we overrule April's second assignment of error.

## IV. Disposition

{¶ 33} Having overruled April's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

BOGGS, P.J., and EDELSTEIN, J., concur.

—————————————